```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ANDRE STEADMAN,
                                    :
              Plaintiff,               REPORT & RECOMMENDATION
                                    :
         -against-                     09 Civ. 5154 (DAB)(MHD)
                                    :
JOHN MAYO, CORRECTIONAL OFFICER,
S. SASSI, SERGEANT, DOWNSTATE       :
CORRECTIONAL FACILITY,
                                    :
              Defendants.
------------------------------------x
```

TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:

Plaintiff Andre Steadman, formerly incarcerated at the Downstate Correctional Facility, commenced this pro se lawsuit under 42 U.S.C. §§ 1983, 1985 and 1986. He asserted that two correctional employees -- defendants Officer John Mayo and Sgt. Steven Sassi[1] -- had assaulted him without provocation during his confinement at Downstate. He also asserted that these two defendants had conspired to violate his civil rights and that they had retaliated against him after he had filed an administrative grievance about the assault. (Compl. 4 ¶ E(1); Compl. Addendum at

---

[1] Although plaintiff names this defendant in his complaint as "Sgt. John Sassai, Corr. Officer" (Compl., dated June 3, 2009 (Dkt. No. 2) ("Compl.") at 2 ¶ I(B)), the defendant's real name is apparently Steven J. Sassi. (See Answer, dated Sept. 11, 2009 (Dkt. No. 11) ("Answer") at ¶ 2; Marshal's Process Receipt, dated Aug. 19, 2009 (Dkt. No. 6)).

1

1).

Following the dismissal of plaintiff's conspiracy and retaliation claims (see Report & Recommendation, dated Aug. 30, 2010 (Dkt. No. 20); Order adopting Report & Recommendation, dated Nov. 1, 2010 (Dkt. No. 23)) and the completion of discovery, Sgt. Sassi has moved for summary judgment on plaintiff's remaining claim of excessive force.[2] The motion is based exclusively on plaintiff's concession during discovery that Sassi never touched him. Steadman has opposed the motion.

For the reasons that follow, we recommend that the motion be denied.

I. Defendant's Motion

Plaintiff is apparently physically handicapped and requires the use of a cane. In his complaint he alleged that the incident in question was initiated by Officer Mayo, who assertedly grabbed his cane and shoved him to the ground. (Compl. ¶ D). Steadman went on to allege that Sgt. Sassi and others arrived on the scene as he lay

---

[2] Defendant Mayo has not moved for such relief.

2

on the ground and that the officers and Sgt. Sassi applied further force, including bending his leg, as he lay prone and helpless. (Id.). Plaintiff further alleged that Sgt. Sassi threatened him with additional force if he did not get up. (Id.).

The premise for Sgt. Sassi's current motion may be briefly summarized by quoting from his Rule 56.1 Statement, which cites segments of plaintiff's deposition testimony and his answers to interrogatories. Based on these materials, it specifies in pertinent part the following:

> 2. Defendant Sergeant Steven Sassi arrived at the scene of the alleged use of force only after Defendant Correction Officer Adam Mayo pulled the pin on his radio. (See Interrogatory Answer 3 annexed to the declaration of Kevin Harkins at . . . Ex. C; see also the Harkins Decl., Ex. A at 15:11-15:14.
>
> 3. Sgt. Stassi arrived at the scene where the alleged use of force had taken place within approximately two minutes. See the Harkins Decl., Ex. A at 9:7-9:10.
>
> 4. Sgt. Sassi never kicked plaintiff. See the Harkins Decl., Ex. A at 9:13-9:14; see also [i]d. At 12:15-12:17; see also the Harkins Decl., Ex. C, interrogatory answer 4.
>
> 5. Sgt. Sassi never punched plaintiff. See the Harkins Decl., Ex. A at 9:15-9:16; see also [i]d. at 12:15-12:17; see also the Harkins Decl., Ex. C, interrogatory answer 4.
>
> 6. Sgt. Sassi never touched plaintiff at all. See the Harkins Decl., Ex. A at 9:17-9:18; see also [i.]d. at 12:15-12:17; see also the Harkins Decl., Ex. C, interrogatory answer 4.

(Def.'s R. 56.1 St., dated Feb. 22, 2013 (Dkt. No. 65) ("Def.'s St.") at ¶¶ 3-6). Based on these factual premises, defendants contend that Sgt. Sassi cannot be held liable for the excessive force allegedly used by Officer Mayo. (See Def.'s Mem. in Supp. of Mot. for Summ. J., dated Feb. 22, 2013 (Dkt. No. 63) ("Def.'s Mem.") at 2-4, 6).[3]

## ANALYSIS

Before addressing the merits of the motion, we briefly summarize the oft-described standards that govern the assessment of motions for summary judgment.

### I. Summary Judgment Criteria

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); see, e.g.,

---

[3] In plaintiff's pro se complaint, he appeared to allege that Sgt. Sassi had in fact used physical force on him. (See Compl. ¶ D). As defendant notes, in Steadman's deposition testimony and his interrogatory answers he did not make the same accusation. (See Def.'s Mem. 2-4).

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Shade v. Hous. Auth. of the City of New Haven, 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson, 477 U.S. at 255; Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. Pro. 56(c); see, e.g., Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the

burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., Celotex, 477 U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003). If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact on any such challenged element of its claim. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party may not rest "merely on allegations or denials" of the factual assertions of the movant, Fed. R. Civ. Pro. 56(e); see, also, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), nor may he rely on his pleadings or on merely conclusory factual allegations. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some

metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>see also</u> <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. <u>See, e.g.</u>, <u>Celotex</u>, 477 U.S. at 324; <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998); <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 526 (2d Cir. 1994).

Since plaintiff is an untutored <u>pro se</u> litigant we note that, as a general matter, the court must liberally construe the papers of an unrepresented party, and thus read them to suggest the strongest arguments available to that party even if the contention is not plainly articulated. <u>See, e.g.</u>, <u>Graham v. Lewinski</u>, 848 F.3d 342, 344 (2d Cir. 1988); <u>Salahuddin v. Coughlin</u>, 999 F. Supp. 526, 535 (S.D.N.Y. 1998). This does not, however, relieve the plaintiff of his obligation "to meet the requirements necessary to defeat a motion for summary judgment." <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 50 (2d Cir. 2003).

II. <u>Assessment of the Motion</u>

There is no dispute on the current record that Sgt. Stassi did not himself lay hands on plaintiff or engage in an assault on him, irrespective of the possible justifications for whatever his co-defendant, Officer Mayo, was doing. Were there no other grounds for possibly finding Sgt. Stassi liable on the excessive-force claim, this circumstance would compel granting his motion.

That said, defendant's motion ignores one aspect of plaintiff's version of events that, although ambiguous on the key point, may fairly be read to permit a trier of fact, if he or she credits plaintiff's account, to find Sgt. Stassi liable for excessive force. We start with the fact that the record permits a finding by a reasonable trier of fact that Officer Mayo engaged in an unprovoked assault against an essentially defenseless inmate by seizing his cane, shoving him to the ground and then further assaulting him by punching him in his ribs and stepping on his neck; indeed, defendants have declined to seek Rule 56 relief for Officer Mayo on the excessive-force claim. The record also permits a trier of fact to find that Sgt. Sassi came upon the scene, and not only took no steps to intervene but made clear orally that he was supportive of Mayo's conduct, or at least acquiescent in it.

(See Compl. ¶ D; Decl. of Kevin R. Harkins, Esq., dated Feb. 22, 2013 (Dkt. No. 64) ("Harkins Decl.") Ex. A at 9, Ex. C).

In this scenario the trier of fact could find Sassi liable for his failure to intervene to protect Steadman. Indeed, this result may come about in either of two fashions.

First, the Second Circuit has long recognized that a law-enforcement officer has a duty "to intercede . . . where that officer observes or has reason to know: (1) that excessive force is being used . . . (2) that a citizen has been unjustifiably arrested, . . . or (3) that any constitutional violation has been committed." Andersen v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citing inter alia O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)). "[F]or liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. (citing O'Neill, 839 F.2d at 11-12). As the Court emphasized in Andersen, however, the question of "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Id.

9

In this case defendants do not address this question at all, contenting themselves with the assertion that Sgt. Sassi did not himself physically assault plaintiff. This silence on the alternative potential ground for liability amounts to a failure of the movant to sustain his initial Rule 56 burden insofar as he might now argue that the evidence would compel summary judgment even on the failure-to-intervene version of the excessive-force claim.

In any event, the evidence proffered by defendant -- which notably does not include any testimony by Sgt. Sassi and relies instead exclusively on plaintiff's statements -- is sufficiently equivocal to permit a trier of fact to find that there was an opportunity for Sgt. Sassi to intervene and that he failed to do so. In this regard, we note that in plaintiff's cited deposition testimony, it is not at all clear whether, at the time that Sgt. Sassi arrived on the scene, Mayo had ceased his aggressive actions or was continuing to use force against plaintiff. Indeed, there is no indication that defendants' counsel ever asked plaintiff that question. Thus, after eliciting testimony that Mayo had snatched plaintiff's cane and shoved him to the ground, counsel asked Steadman when Sassi had arrived and plaintiff estimated "two minutes", possibly the length of time from the start of his

interaction with Mayo or possibly from when Mayo asked for assistance by phone. (Harkins Decl. Ex. A at 9). The attorney then turned to Sassi's actions, and plaintiff agreed that Sassi had not kicked, punched or touched him, but stated that Sgt. Stassi had "verbally assaulted" him. (Id.). In response to further questions, Steadman then testified that Mayo had punched him and stepped on his leg. (Id. at 9-10). There is no indication in that testimony whether these actions by Mayo -- the punching and stepping on the leg -- had occurred before Sassi came or after he had arrived, and it appears that counsel never sought to clarify this ambiguity at the deposition. He also did not seek to elicit further testimony about what Sassi had done after coming on the scene. Since, for Rule 56 purposes, the court must interpret ambiguities in the record in favor of the party resisting summary judgment, Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010); La Fond v. Gen. Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995), the proffered testimony -- unless conclusively clarified in favor of defendant -- should allow a failure-to-intervene claim against Sgt. Sassi to proceed to trial.

Defendant also proffers plaintiff's answers to interrogatories, but these too may be viewed as consistent with potential liability by Sgt. Sassi. (Id. Exs. B & C)). The

11

interrogatories asked plaintiff what Mayo had done, what Sassi had done and what force had been used against him, and in his response he stated (responding, respectively, to interrogatories 1-3):

> Defendant Mayo gra[bbed] my cane[,] pulled me up and sta[rted] pushing me outside. And then I fell on some water and he handcuffed me [and] he pulled the pin.
>
> The other [CO]s sta[rted] coming and Sgt. Sassi said get up get up[.] My officers do not get inmate[s] up. [I]f you do not get up we are going to throw you down the stairs.
>
> Officer Mayo gra[bbed] my cane[,] cuff[ed] me and step[ped] on my head like he was capturing [an] animal in the jungle. The handcuff was real tight[.] [T]hat [is] torture. I know being in the mental [h]ealth block I should not to be treated that way and I had five strokes.

(Id. Ex. C). These answers do not make it unambiguously clear that Sgt. Sassi was not present for at least some of Mayo's alleged use of excessive force. Indeed, to the contrary, the answers can be read to suggest that it was only after the sergeant had arrived that Mayo stepped on plaintiff's head and also cuffed plaintiff so tightly as to cause unnecessary pain.[4] From this scenario, there

---

[4] Excessively tight handcuffing can, in some circumstances, amount to excessive force. See generally Lynch ex rel. Lynch v. City of Mt. Vernon, 567 F. Supp.2d 459, 468 (S.D.N.Y. 2008) (citing inter alia Kerman v. City of New York, 261 F.3d 229, 239-40 (2d Cir. 2001) (using Fourth Amendment analysis to deny summary judgment where plaintiff alleged that police officer defendants applied overly-tight handcuffs, causing injury)); Gonzalez v. City of New York, 2000 WL 516682, at *4 (E.D.N.Y. Mar. 7, 2000) (same); see also Simpson v. Saroff, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990) (same). We need not address here the

12

remains a triable issue as to whether Sassi could have intervened to stop the alleged use of undue force. See, e.g., Tavares v. City of New York, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010).

Finally, a separate, if related, form of analysis would potentially expose Sgt. Sassi to liability for the alleged assault by Mayo. As we have noted, the duty to intervene is imposed on fellow officers as well as supervisors. As a separate matter, however, supervisors may be held liable in certain circumstance for the constitutional torts of their subordinates, and the limited record here would not preclude imposing liability on Sassi on that basis.

A plaintiff may not prevail on a constitutional tort claim against an individual defendant absent proof that the defendant was personally responsible in some way for the alleged misconduct. It is well settled that, regardless of a defendant's position in the governmental hierarchy, he cannot be held liable under section 1983 for an award of damages absent some form of personal involvement in the constitutional tort. See, e.g., Scott v. Fischer, 616 F.3d 100,

---

question of what standards apply to such a claim in the context of prisons since plaintiff's testimony is consistent with other forms of force being used.

110 (2d Cir. 2010) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)); Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Until recently the accepted standard for personal involvement by a supervisor was that articulated in Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). In Colon the Court identified five categories of conduct that may demonstrate the personal involvement of a supervisory defendant. Such personal involvement, the Court held, may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff]s by failing to act on information indicating that unconstitutional acts were occurring.

Id.; accord Provost, 262 F.3d at 154; Wright, 21 F.3d at 501; see also Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Recently, however, the scope of what qualifies as "personal involvement" by a supervisor has come into question by virtue of a 2009 decision in which the Supreme Court held, in a pleading context, that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948. The Second Circuit has not yet addressed how Iqbal affects the five categories of conduct that give rise to supervisory liability under Colon. See, e.g., Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the Supreme Court's decision in Ashcroft v. Iqbal . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach Iqbal's impact on Colon in this case"); Reynolds v. Barrett, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("the fate of Colon [after Iqbal] is not properly before us."). However, because Iqbal specifically rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," several decisions in this district have held that Iqbal has nullified most of the longstanding Colon factors. See Bellamy v. Mount Vernon Hosp., 2009 WL 1835939, at *4

(S.D.N.Y. June 26, 2009)[5]; <u>Newton v. City of New York</u>, 640 F. Supp.2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in Ashcroft v. Iqbal."). These courts have concluded that "[o]nly the first and part of the third <u>Colon</u> categories pass <u>Iqbal</u>'s muster," and that "[t]he other <u>Colon</u> categories impose the exact types of supervisory liability that <u>Iqbal</u> eliminated," because only the first and third categories sufficiently allege personal involvement to permit supervisory liability to be imposed after <u>Iqbal</u>. <u>Bellamy</u>, 2009 WL 1835939, at *6; <u>Spear v. Hugles</u>, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009) ("The Supreme Court explicitly rejected the argument that, 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.' . . . Accordingly, only the first and third <u>Colon</u> factors have survived the Supreme Court's decision in <u>Iqbal</u>.").

---

[5] "Only the first and part of the third <u>Colon</u> categories pass <u>Iqbal</u>'s muster - a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred." <u>Bellamy</u>, 2009 WL 1835939, at *6.

16

We disagree with this narrow interpretation of Iqbal, as have a number of other courts. See, e.g., Delgado v. Bezio, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011); Qasem v. Toro, 2010 WL 3156031, at *3 (S.D.N.Y. Aug. 10, 2010); D'Olimpio v. Crisafi, 2010 WL 2428128, at *4-5 (S.D.N.Y. June 15, 2010). We believe, as observed in Sash v. United States, 674 F. Supp.2d 531 (S.D.N.Y. 2009), that "[i]t was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." Id. at 544 (internal citation omitted). Thus, as in the present case, where the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in Colon should still apply. Id. (citation omitted); D'Olimpio, 2010 WL 2428128, at *4-5. Hence we look to earlier Second Circuit precedent that applies the tests of deliberate indifference or gross negligence to assess supervisory liability, a standard that demands a showing of actual or constructive notice by the supervisory defendant of constitutional torts committed by their subordinates. Sash, 674 F. Supp.2d at 544; cf. Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011).[6]

---

[6] Although Connick dealt solely with municipal liability under section 1983, we believe that its analysis is informative

17

When we apply these standards, the deposition testimony of Steadman and his interrogatory answers would allow a reasonable trier of fact to find that (1) Sassi was Mayo's supervisor, (2) that Sassi was aware of Mayo's use of excessive force since he was present for at least a portion of it, and (3) that he not only

---

as to the scope of personal liability for supervisors and supports our conclusion that Colon remains viable. In the context of either municipal liability or supervisory liability, the Supreme Court has clearly stated that a defendant is only responsible for his own actions. Compare Connick, 131 S.Ct. at 1359 ("[U]nder § 1983, local governments are responsible only for 'their own illegal acts' . . . [t]hey are not vicariously liable under § 1983 for their employees' actions.") (quoting Pembaur, 475 U.S. at 479) (emphasis in original), with Iqbal, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Hence, if failure-to-train claims or the "deliberate indifference" test for a supervisor's personal involvement in constitutional violations under § 1983 were no longer viable after Iqbal, we would expect that the same type of § 1983 claims would fail if asserted against a municipality. Yet in Connick, the Supreme Court applied the "deliberate indifference" test to a failure-to-train claim. 131 S.Ct. at 1360-66. Connick ultimately rejected municipal liability on the ground that the plaintiff had not proven the "pattern of similar violations" establishing that the supervisory defendant had received adequate notice of the specific constitutional violation allegedly resulting from his failure to adequately train his subordinates, and thus failed to show a "'policy of inaction' that [was] the functional equivalent of a decision by the city itself to violate the Constitution." Id. at 1366 (quoting City of Canton, 489 U.S. at 395). The Court did not, however, suggest that municipal liability was unavailable because it was premised on a failure-to-train claim, compare Newton, 640 F. Supp.2d at 448, or allegations of deliberate indifference, which would seem to fall within Colon's fifth category of personal liability. Compare Bellamy. See 2009 WL 1835939, at *6.

18

acquiesced in that conduct but approved of it, as indicated by his alleged statements to plaintiff, demanding that he get himself up from the ground and threatening to have him thrown down the stairs if he did not do so.

In sum, on the current record there are triable issues of fact as to the potential liability of Sgt. Sassi for the excessive force allegedly used on plaintiff by his co-defendant Officer Mayo.

## CONCLUSION

For the reasons stated, we recommend that defendants' motion for summary judgment on behalf of Sgt. Sassi be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Deborah A. Batts, Room 2510, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28

U.S.C. § 636 (b)(1); Fed. R. Civ. Pro. 72, 6(a), 6(e); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>DeLeon v. Strack</u>, 234 F.3d 84, 86 (2d. Cir. 2000) (citing <u>Small v. Sec'y. of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989)).


Dated: New York, New York
       September 20, 2013

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE


Copies of this Report & Recommendation are being mailed today to:

Mr. Andre Steadman
# 3491213359
Anna M. Kross Center
18-18 Hazen Street
East Elmhurst, New York 11370

Kevin R. Harkins, Esq.
Assistant Attorney General
 for the Sate of New York
120 Broadway
24th Floor
New York, New York 10271